# Whelan *v.* Miller, Appellant.

*Abuse of civil process—Attachment execution—Bank account—Damages.*

1. In an action to recover damages for an alleged abuse of civil process where the plaintiff shows that his bank account had been tied up by an attachment execution by the defendant, and that by reason thereof he had been compelled to ask his creditors to wait upon him for the discharge of his indebtedness to them, until the attachment could be raised, the court cannot give binding instructions for the defendant upon the ground that the plaintiff had not been injured.

2. Where in such a case it appears that the plaintiff's name was "John M. Whelan" and that the judgment note on which judgment was entered, and under which the attachment issued was signed by plaintiff's father, "John Whelan" and that the defendant had added the words after the signature "also known as John M. Whelan" and had issued the attachment against the bank deposit of John M. Whelan, the defendant will not be permitted to assert that the action cannot be maintained because it involved a collateral attack upon the judgment.

3. There is a distinction between a malicious use and a malicious abuse of legal process. An abuse is where the party employs it for some unlawful object, not the purpose for which it is intended by the law to effect. On the other hand, legal process may be maliciously used so as to give rise to a cause of action where no object is contemplated to be gained by it than its proper effect and execution. In the latter case it is necessary to aver and prove that the person using the process has acted not only maliciously, but also without reasonable or probable cause; and in such a case the proceeding must be determined finally before any action lies for the injury. In the case of malicious abuse of process an action will lie before the proceeding has been finally determined. Where the process abused is an attachment execution, and such attachment has been vacated before an action for damages for the abuse was brought, a recovery may be had even if the case were to be considered as one of malicious use, and not of malicious abuse.

4. In an action for malicious abuse, where the malice is only such

as results from a groundless act, and there is no actual malice or design to injure, the rule is compensatory damages; but where actual malice exists, a formed design to injure and oppress, the jury may give vindictive damages, that is, damages to punish the defendant for his fraud and malice.

5. In an action to recover damages for a malicious abuse of an attachment execution, a judgment on a verdict awarding punitive damages will not be reversed, where there is evidence sufficient to sustain a finding that the defendant knew when he garnisheed the plaintiff's bank account that the money belonged to the plaintiff, and not to the defendant in the judgment under which the attachment execution issued.

*Practice, C. P.—Trial—Answer to points—Charge—Harmless error.*

6. Judgment on a verdict will not be reversed because the trial judge gave somewhat misleading answers to two points, where it appears from the clear and express instruction given in the general charge that the jury could not have been misled by the answers to the points.

Argued Oct. 20, 1911.   Appeal, No. 21, Oct. T., 1911, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1908, No. 1,853, on verdict for plaintiff in case of John M. Whelan v. Adam Miller.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Trespass to recover damages for malicious abuse of civil process.   Before CARR, J.

The plaintiff presented the following points:

1. If the jury find that the plaintiff in the judgment note filed to court of common pleas, No. 1, December Term, 1898, No. 1,156, in which the defendant in this action was the plaintiff therein, and John Whelan, the father of the plaintiff, was the defendant, added thereto the words, "also known as John M. Whelan," without the knowledge or consent of the plaintiff or his father, then that was a fraud upon the Whelans, and the subsequent attempt to levy upon the property of the son, John M. Whelan, would be a malicious abuse of civil process, and the plaintiff would be entitled to recover vindictive damages.   *Answer:* Affirmed. [1]

2. If, therefore, the jury find that the contract of the defendant, Adam Miller, was with the father, John Whelan, and Miller seeking to impose a liability on the son, .John M. Whelan, caused his counsel to add to the judgment note the words, "also known as John M. Whelan," and thereafter attached the bank account of John M. Whelan with the Tradesmen's Trust Company, then your verdict will be for the plaintiff, and the plaintiff would be entitled to punitive damages. *Answer:* Affirmed. [2]

Defendant presented these points:

1. There is a distinction between a malicious use and a malicious abuse of legal process. An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it. Thus, if a man is arrested, or his goods seized in order to extort money from him, even though it be to pay a just claim other than that in suit, not the legal object of the process, it is settled that in an action for such malicious abuse it is not necessary to prove that the action in which the process issued has been determined, or to aver that it was sued out without reasonable or probable cause. It is evident that when such a wrong has been perpetrated, it is entirely immaterial whether the proceeding itself was baseless or otherwise.

On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated to be gained by it other than its proper effect and execution. As every man has a legal power to prosecute his claims in a court of law and justice, no matter by what motives of malice he may be actuated in doing so, it is necessary in this class of cases to aver and prove that he has acted not only maliciously, but without reasonable or probable cause. The case at bar is not a case of malicious abuse of legal process and that is not to be considered, and the only question to be decided is, was it a malicious use of legal process, as I have heretofore described to you. *Answer:* Refused. [3]

2. If you find for the plaintiff, as there was no actual

malice or design to injure the plaintiff, you can only give him such damages as are compensatory; that is to say, so much in dollars and cents as he lost. *Answer:* Refused. [4]

4. If you find that the attachment execution was issued. simply groundlessly and not designedly or maliciously,. your verdict could only be for compensatory damages. *Answer:* Refused. [5]

5. It is clearly settled that in an action for malicious use of civil process, such as the one at bar, that the proceeding must be determined finally before any action lies for the injury, and that the said determination must have been in favor of the plaintiff in the action for damages. In this case, the judgment having been in full force at the time that the attachment issued, and there being nothing on the record to invalidate it, the previous proceeding stands in favor of the defendant in this action and thereby prevents the plaintiff in this action from showing any want of probable cause, and consequently your verdict must be for the defendant. *Answer:* Refused. [6]

7. Under the law and the evidence, your verdict must be for the defendant. *Answer:* Refused. [7]

Verdict and judgment for plaintiff for $100. Defendant appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*B. I. DeYoung,* for appellant.—A case for malicious prosecution in obtaining a judgment by fraud cannot be obtained where such judgment is still existing, for such action would be a collateral attack on a subsisting judgment: Stackhouse v. Keiger, 25 W. N. C. 436; Clark v. Douglass, 62 Pa. 408; Herman v. Brookerhoff, 8 Watts, 240; Rosenstein v. Brown, 7 Phila. 144; Stackhouse v. Keiger, 7 Lanc. Law Rev. 133.

The burden is upon the plaintiff to aver and prove want of probable cause for the institution of the prior action: Murson v. Austin, 2 Phila. 116; Rosenstein v. Brown, 7 Phila. 144.

It is further submitted that it was necessary for the plaintiff to prove that the issuing of the attachment was done maliciously, and that the burden of proof was on him and that he failed to sustain it: Emerson v. Cochran, 111 Pa. 619.

*M. J. O'Callaghan,* for appellee.—The distinction between actions for malicious prosecution and malicious abuse of civil process is that in the former the malice or want of probable cause must be shown, while in the latter it is the abuse of civil process or a vindictive motive in its use: Rothermel v. Marr, 98 Pa. 285; Cooper v. Hart, 147 Pa. 594; Clemens v. Price, 174 Pa. 306; Humphreys v. Sutcliffe, 192 Pa. 336.

It is submitted that the plaintiff in this action was entitled to punitive damages: Barnett v. Reed, 51 Pa. 190; Vivian v. Challenger, 45 Pa. Superior Ct. 1.

When the appellant caused to be added to the judgment note the words "Also known as John M. Whelan," he destroyed the validity of the obligation: Williams Typewriter Co. v. Cleaver, 38 Pa. Superior Ct. 376; Shiffer v. Mosier, 225 Pa. 552.

OPINION BY RICE, P. J., March 1, 1912:

This action was brought to recover damages for the alleged abuse of civil process, the plaintiff claiming, in his declaration, that, by reason of an attachment execution issued by the defendant and laid on a bank deposit belonging to the plaintiff, certain checks of his were dishonored, and his credit, financial standing, and business reputation were injured. The court charged that special damages for injury to the credit and circumstances of one against whom civil process has been issued cannot be recovered, unless they are set forth with particularity in the plaintiff's statement, and, as this had not been done, the plaintiff could not recover compensatory damages. The defendant certainly has no right to complain of this instruction. But the learned judge further charged that,

if the jury found certain facts, they could award the plaintiff nominal damages, and under certain other findings of fact, could award punitive damages. The jury rendered a verdict in his favor for $100, and from the judgment thereon the defendant appealed. The principal questions raised are, first, as to the right to maintain the action; second, as to the right to recover punitive damages.

The plaintiff's name is John M. Whelan, and his father's name is John Whelan. In 1908, a judgment note, under seal, bearing the name John Whelan as maker, and payable to Adam Miller, was delivered to the latter. The name of John Whelan was signed, and the note was delivered by John M. Whelan, who testified that he was acting for his father under the authority of a power of attorney. The consideration for the note was a balance due Miller for work and materials done and furnished by him as a subcontractor on a building operation. Whether this building operation out of which the debt accrued was conducted by the father or the son was a matter in dispute, the defendant's contention being that it was conducted by the son and therefore the indebtedness was his, and the plaintiff's contention being that it was conducted by the father, the plaintiff being a minor at the time, and therefore the indebtedness was the father's. As will be seen later, the verdict of the jury implies a finding that the building operation was conducted by the father, and that the indebtedness for which the note was given was due from him to the defendant. Some time later, the defendant, without the knowledge or consent of John M. Whelan, caused his attorney's clerk to add under the name of the maker the words, "also known as John M. Whelan," and, as thus altered, filed the note and caused judgment to be entered upon it. Later, he issued a fi. fa., which was returned nulla bona, and later an alias fi. fa., by virtue of which the household goods of John Whelan in his residence were levied upon. While this levy was pending, John Whelan filed a petition in bankruptcy and included in his schedule of debts the debt due Miller. The

evidence shows that Miller had notice of the bankruptcy proceeding, part of which was a petition by John Whelan to restrain Miller from proceeding with his execution. After hearing, the bankruptcy court refused the prayer of the petition, whereupon Miller proceeded with his execution against John Whelan and caused the goods levied upon to be sold by the sheriff. They brought $170.55, which was not sufficient to satisfy the judgment. Afterward (September 20, 1904), John Whelan was discharged as a bankrupt. Nothing further appears to have been done on the judgment until February, 1908, when Miller issued an attachment execution thereon against "John Whelan, also known as John M. Whelan," and, by virtue thereof, caused to be attached a bank deposit of John M. Whelan. Next, in order of time, was a petition on behalf of John Whelan, the father, upon which the court granted a rule, which was subsequently made absolute, to show cause why the attachment should not be vacated, and why the plaintiff, Miller, should not be restrained from thereafter proceeding on the judgment, upon the ground that the judgment was discharged by the adjudication in bankruptcy. We take this statement of the grounds of that application, and the action of the court upon it, from the notes of testimony, and, as the appellant has not printed either the petition or the record of the proceeding in his paper-book, it is to be presumed that he concedes the correctness of the statement.

On the trial, the court affirmed the defendant's point, that, as the bank account exceeded the amount of the attachment execution by more than enough to pay the single check that was drawn upon it after the attachment was laid, the bank's refusal to pay that check was not caused by the defendant, and, therefore, could not be considered as an element of damage. It is contended, as a logical conclusion from the affirmance of that point, that the court ought also to have affirmed the defendant's other point, which was for binding direction in his favor. This is a non sequitur. The plaintiff's right to recover

did not depend wholly on proof of dishonor of his checks. To the extent that the attachment bound the fund the plaintiff was prevented from drawing upon it. This, of itself, was a legal injury for which, if there was abuse of legal process, the plaintiff could recover nominal damages at least. Moreover, there was testimony that, by reason of the fund being tied up, the plaintiff was compelled to ask his subcontractors to wait upon him for the discharge of his indebtedness to them, until the attachment could be got rid of. No more need be said to show that binding direction for the defendant, upon the ground that he had not been injured, would have been erroneous.

Another point urged is that the action could not be maintained because it involved a collateral attack on the judgment. This argument implies that the judgment was against the plaintiff in this action, which is not only not conclusively shown by the record, but is contrary to the manner in which the plaintiff in the judgment, the defendant in this action, treated it. It was not until he had failed to obtain full satisfaction of it by proceeding on it against John Whelan, that he attempted to enforce it by process against this plaintiff. It is not an impeachment of a judgment by confession, to prove that the defendant is not identical with another person bearing the same name; a fortiori, where the names of the two persons are not in all respects identical. In short, the payee's unauthorized alteration of the note, by writing under the name of John Whelan, the maker, the words, "also known as John M. Whelan," did not preclude this plaintiff from showing that he and the defendant in the judgment were not the same persons, and, therefore, the judgment could not be used as the foundation of execution process against him. To hold otherwise would be to declare that, prima facie, the record showed a valid and enforcible judgment against all the John M. Whelans in the commonwealth, and that this prima facies could not be overthrown by any of them except in a direct proceeding instituted for the purpose. It is quite clear that a payee in an instru-

ment containing a confession of judgment cannot obtain such advantage by such an unauthorized alteration as was admittedly made in this case.

Another ground upon which it is claimed that binding direction should have been given for the defendant, is that the proceeding had not been fully terminated. The distinction between a malicious use and a malicious abuse of legal process was thus pointed out by Justice Shars-wood, in Mayer v. Walter, 64 Pa. 283: "An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it. . . . It is evident that when such a wrong has been perpetrated, it is entirely immate-. rial whether the proceeding itself was baseless or otherwise. We know that the law is good, but only if a man use it lawfully. On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated to be gained by it other than its proper effect and execution. As every man has a legal power to prosecute his claims in a court of law and justice, no matter by what motives of malice he may be actuated in doing so, it is necessary in this class of cases to aver and prove that he has acted not only maliciously, but without reasonable or probable cause. It is clearly settled also, that the proceeding must be determined finally before any action lies for the injury; because, as it is said in Arundell v. Tregono, Yelv. 117, the plaintiff will clear himself too soon, viz., before the fact tried, which will be inconvenient; besides, the two determinations might be contrary and inconsistent." Under the facts which the evidence amply warranted a jury in finding, there was in this case an abuse of legal process. It was not an attempt to enforce the collection of the judgment out of money which there was probable ground to believe belonged to the defendant in the judgment, but, under the color of process, which did not authorize it, to compel another person to pay it by seizing his property. As that process was vacated before this

action was brought, the rule that the proceeding must be determined finally before an action lies for the injury, would not prevent recovery, even if the case were to be considered as one of malicious use, and not of malicious abuse.

We come, then, to the question of damages. In Barnett v. Reed, 51 Pa. 190, which was an action for malicious abuse of civil process, it was held that, where the malice is only such as results from a groundless act, and there is no actual malice or design to injure, the rule is compensatory damages; but where actual malice exists, a formed design to injure and oppress, the jury may give vindictive damages, that is, damages to punish the defendant for his fraud and malice. There was ample evidence in the present case to warrant the submission of the question of punitive damages to the jury, and we are not convinced that there was such error in the manner of submitting it as requires a reversal of the judgment. We agree that the plaintiff's first and sixth points were open to criticism, and might have been misleading had they not been followed, in the general charge, by instructions which plainly qualified them. Before taking up the points, the learned judge laid down the general rule as to compensatory, punitive, and nominal damages; and, in the course of those instructions, said that mere negligence on the part of the defendant is not enough to sustain recovery for punitive damages, and that, while malicious motive alone could never constitute a cause of action, yet, where the allegations are sufficient to sustain the action, malice may be alleged and proved to enhance the damages. He also told the jury that the burden was upon the plaintiff to prove want of probable cause for the institution of the prior proceeding. Then, after answering the plaintiff's points, he said, in affirming the defendant's third point, that the chief fact for the jury to decide was whether or not there was probable cause for the issuance of this attachment, and that, if the jury found that there was probable cause, then their verdict should be for the defendant.

After answering the points, the learned judge proceeded with his general charge, in the course of which he said to the jury that, if they believed there was damage done, but that it was doubtful whether or not it was done with malicious intent on the part of Miller to pursue the property of John M. Whelan, not knowing it was John M. Whelan's property, for the liability of John Whelan, the father, then it might be a case for merely nominal damages. Still more favorable to the defendant was the instruction that, if the jury believed the testimony of Miller that he thought he was dealing only with John M., and that John M. was, in fact, the man who had the interest in the property, and that John, the father, had no interest in it, "then you will find that there was a legal or probable cause for the issuance of this attachment, if you believe Miller was honestly and sincerely in that belief, and your verdict should be for him." And in concluding his charge, he said to the jury that they were to ascertain whether or not there was the absence of reasonable cause and whether or not there was malice in the issuance of this attachment execution. "If you find there was no malice, then he is not entitled to vindictive damages, and if you find there was reasonable cause, your verdict should be for him." These final words, taken in connection with the other portions of his general charge, were sufficient, in our judgment, to correct any inaccuracy there may have been in the two points to which we have alluded. See Bailey v. Presbyterian Board, 200 Pa. 406; Fitzpatrick v. Union Traction Co., 206 Pa. 335. We recognize the general rule, that an error in one part of a charge is not cured by a correct statement in another part, if the conflict in the instructions tends to leave the jury in doubt as to which they are to follow. But we are of opinion that this case is not within the rule.

The judgment is affirmed.