Fenton Storage Company, Appellant, *v.* Feinstein

Argued October 6, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Thomas O. Haydock,* for appellant.

*Simon Pearl,* with him *Henry Arronson,* for appellee.

OPINION BY STADTFELD, J., November 18, 1937:

This is an action in trespass to recover damages for the alleged malicious abuse of legal process. The issue was raised by a statement of claim, and an affidavit of defense raising questions of law contending that the statement of claim discloses no cause of action against the defendant. The questions of law raised in the affidavit of defense were sustained and judgment was entered for defendant, in an opinion by LAMBERTON, J. This appeal followed.

The facts are accurately stated in the opinion of the court below, from which we quote as follows: "It is averred that Plaintiff acquired a piece of real estate in

the City of Philadelphia subject to an existing mortgage in the sum of $4,000 previously created by one Seligman in favor of Pottash Bros. Building and Loan Association; that on July 18, 1932, Plaintiff gave to the Building Association its bond in the penal sum of $8,000 as collateral security for the payment of said mortgage loan; that at the time of the execution and delivery of said bond, it was understood and agreed that the liability of Plaintiff thereunder should be limited to the current monthly dues, interest, fines and premiums upon the Seligman mortgage and that any execution issued upon a judgment entered upon said bond should be correspondingly limited; that the monthly payments upon said mortgage, as thereafter reduced, were $22.00; that thereafter, Defendant, Myer Feinstein, a director of the Building Association, did induce and illegally conspire with the other directors to enter the bond of Plaintiff of record, which was accordingly done on March 5, 1935, in Court of Common Pleas No. 3 of Philadelphia County, as of March Term, 1935, No. 790, and damages were assessed in the sum of $2,285; that Defendant thereafter caused an unrestricted execution to issue upon said judgment, attaching the goods and chattels of Plaintiff, particularly funds on deposit at the Philadelphia National Bank; that said act of Defendant was done willfully and maliciously, with full knowledge that said bond was restricted as above recited; that the purpose of Defendant and of the Building Association in causing an unrestricted execution to issue was to force Plaintiff to settle or compromise the claim of the Building Association; that Plaintiff, on March 8, 1935, filed a petition in Court of Common Pleas No. 3, setting forth the above facts and thereupon the Court allowed a rule upon the Building Association to present cause why the execution should not be limited to $88.00, plus a reasonable attorneys fee, and subsequent execution limited to the sum of $22.00 per month; that the Build-

ing Association and Defendant caused an answer to be filed which was so incorrect and evasive as to delay the court in passing upon the question involved, whereby the credit of Plaintiff was impaired; that Plaintiff has been obliged to spend large sums of money in obtaining legal advice and assistance in defending the said action, and in attempting to curb said execution and abuse thereof, and in protecting its name, credit and business.

"Defendant filed an affidavit of defense raising questions of law which may be briefly stated as follows: 1. That the Statement of Claim shows no cause of action against Defendant. 2. That it is incumbent upon Plaintiff to plead that the original action has terminated favorably to him, which Plaintiff has failed to do, the fact being that said action terminated unfavorably to Plaintiff......

"We have examined the record in the case of *Pottash Bros. Building and Loan Association v. Fenton Storage Co.* in the Court of Common Pleas No. 3, as we have a right to do, since this record is included in the Statement of Claim by reference. We find that on March 20, 1935, counsel for the parties entered into a stipulation, approved by Judge MILLAR, providing that Fenton Storage Company should forthwith pay to Pottash Bros. Building Association the sum of $200, plus actual costs expended, and should thereafter pay $30.00 per month until the full sum of the judgment, to wit, $2,285, is paid; that if there be any failure on the part of the Fenton Storage Company to pay any such installment, execution might immediately issue for the full balance then unpaid; that the rule to limit execution be withdrawn. Pursuant to said stipulation, said rule was withdrawn on March 20, 1935, and the record shows no further proceedings.

"While the Statement of Claim does not clearly differentiate between the entry of judgment and the issuance of execution, Plaintiff's brief shows that Plaintiff does not complain about the entry of judgment, but

complains about and asks damages on account of the unrestricted execution."

Appellant contends, quoting from the brief of counsel that: "It admits the full amount of the judgment, but says that the defendant in violation of his agreement used a legal process in such a way as to accomplish an ulterior object, not contemplated by the process, to wit: the forcing from the defendant in the action (the plaintiff here) the payment of more money than it was obliged to pay at that time for the particular purpose of the Plaintiff. To that extent it was a clear abuse of a legal process; the ulterior object of the then Plaintiffs being to obtain the full amount of their debt at once, perhaps, and it might be fairly argued, for the purpose of more quickly liquidating the Association."

Quoting from Mr. Justice SHARSWOOD, in the case of *Mayer v. Walter,* 64 Pa. 283: "There is a distinction between a malicious use and a malicious abuse of legal process. An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it. Thus, if a man is arrested, or his goods seized in order to extort money from him, even though it be to pay a just claim other than that in suit, or to compel him to give up possession of a deed or other thing of value, not the legal object of the process, it is settled that in an action for such malicious abuse it is not necessary to prove that the action in which the process issued has been determined, or to aver that it was sued out without reasonable or probable cause: *Grainer v. Hill,* 4 Bing. N. C. 212. It is evident that when such a wrong has been perpetrated, it is entirely immaterial whether the proceeding itself was baseless or otherwise. We know that the law is good, but only if a man use it lawfully.

"On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated to be gained by

it other than its proper effect and execution. As every man has a legal power to prosecute his claims in a court of law and justice, no matter by what motives of malice he may be actuated in doing so, it is necessary in this class of cases to aver and prove that he has acted not only maliciously, but without reasonable or probable cause. It is clearly settled also, that the proceeding must be determined finally before any action lies for the injury; . . . . . . It is necessary that the proceeding should have come to an end, and that end must have been a successful one to the plaintiff; otherwise it shows actual, which is more than probable, cause . . . . . . "

Quoting from the opinion of the court below in the instant case: "It will be noted that the presence of malice does not determine in which class an action belongs, for malice is an essential ingredient of both classes. The distinction lies in the object for which the legal process is used. If it be used maliciously for a purpose other than that for which it is designed, it is a malicious abuse of legal process, and an action to recover damages may be immediately instituted. But, if it be used for the purpose for which it is designed, even though there be malice, no action may be brought until the matter has been adjudicated favorably to the plaintiff. In this case the legal process employed was attachment execution to enforce payment of a money judgment. This is the very purpose for which an attachment execution is designed. Consequently, Plaintiff's complaint is for the malicious use of legal process."

The distinction referred to has been recognized in all of the cases in the appellate courts of our state: see inter alia, *Shane v. Gulf Refining Co.*, 114 Pa. Superior Ct. 87, 173 A. 738; *Siegel v. The Netherlands Co., Inc.* 59 Pa. Superior Ct. 132; *Summit Hosiery Co. v. Gottschall*, 292 Pa. 464, 141 A. 298. The cases are discussed in a very comprehensive opinion by our Brother PARKER

in *Scheide v. Home Credit Co.,* 107 Pa. Superior Ct. 204, 162 A. 321.

The nature of the plaintiff's complaint arises out of the alleged issuance of the attachment for a sum greater than, according to the plaintiff's version, could properly be collected on the judgment entered. The attachment was used to accomplish the ordinary, usual, legal object of such process. It is clear that the rules to be applied in a consideration of the sufficiency of plaintiff's pleading are the rules applicable to an action for malicious use of process. There was no complaint of a perversion of the writ of attachment issued by the plaintiff in the prior suit. The writ in question sought only to effect the legal object of the process and not to serve any purpose which the law did not intend to be accomplished by such writ. As stated in *Hauser v. Bartow,* 273 N. Y. 370, 7 N. E. (2nd Series) 268 (1937) : "Everyone has a right to use the machinery of the law, and bad motive does not defeat that right. There must be a further act done outside the use of the process—a perversion of the process. If he uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of the process ...... In this case, whatever may have been respondent's motives, she used the process of the court for the purpose for which the law created it. She used it, she did not abuse it ...... the complaint, therefore, fails to state a cause of action for *abuse* of process."

Applying the rules applicable to a case of an alleged malicious use of legal process, such action cannot be commenced or maintained until the cause of action has been finally determined in favor of the defendant therein. Mr. Justice WALLING in *Garland v. Wilson,* 289 Pa. 272, 275, 137 A. 266, says: "This is manifest, for one of the necessary requisites of such action is want of probable cause, which cannot be determined until the suit is ended."

In *Braddee v. Brownfield,* 4 Watts 474, 475, Mr. Chief

Justice GIBSON said: "A judgment on warrant of attorney is as much an act of the court as if it were formally pronounced on nil dicit, or a cognovit; and till it is reversed or set aside, it has all the qualities and effect of a judgment on verdict."

The demurrer to the plaintiff's pleading in an action for malicious use of legal process upon the ground, inter alia, that it was not alleged that the action upon which the process issued had been finally determined in favor of the defendant therein (the plaintiff in the present suit) was held properly sustained in *Davis v. Hall*, 93 S. E. (Ga.) 25 (1917).

In *Saliem v. Glovsky*, 172 Atl. 4 (Me. 1934), where it was held (quoting from the syllabus): "Malicious use of process is employment of process for its ostensible purpose, though without probable cause, and requires that action in which process was used terminated favorably to plaintiff."

A demurrer to a statement for malicious use of civil process, in *Roberts v. Willys-Overland, Inc.*, 108 S. E. 138 (Ga. 1921) was sustained by reason of the fact that it did not appear in the plaintiff's pleading that the previous litigation had finally terminated against the plaintiff therein.

In *Beadle v. Friel*, 320 Pa. 560, Mr. Justice MAXEY, cited with approval *Garland v. Wilson* (supra) and *Mayer v. Walter* (supra) the following being a statement by Mr. Justice SHARSWOOD in the last cited case: "It is clearly settled also, that the proceeding must be determined finally before any action lies for the injury; because, as it is said in *Arundell v. Tregono*, Yelv. 117, the plaintiff will clear himself too soon, viz., before the fact tried, which will be inconvenient; besides, the two determinations might be contrary and inconsistent."

The present action by plaintiff is in effect a collateral attack upon the judgment against plaintiff while the judgment stands unappealed from, unreversed and un-

impaired. The rule to limit the execution was by stipulation withdrawn and no further proceedings followed. The compromise embraced in the stipulation barred any alleged claim for malicious use of process, as it specifically provides that in case of any default by the defendant to make any monthly payment, and such default continues for ten days after mailing written notice to the defendant, the plaintiff shall be privileged to issue execution for the amount of $2,285 together with interest, less such moneys paid on account of the $2,285 as the plaintiffs may desire under the judgment entered in said case. Plaintiff (defendant in the original judgment) admits that at the time of the entry of judgment it was in default for four months dues, or a total of $88.

By compromising and settling the judgment entered against it, plaintiff is estopped from maintaining this action.

*Sacchetti v. Sandt*, 64 Pa. Superior Ct. 311, is substantially identical in its facts to the instant case. Quoting from the opinion of the lower court by STEWART, P. J., which was adopted by this court, on p. 315: "He settled that proceeding without any effort to contest it, and under the authorities he is now estopped from bringing suit ...... In *Clark v. Everett*, 2 Grant 416, it is held: 'If a defendant is arrested upon a debt that is not due, and the matter is compromised, he paying the money without objection, this is an admission that the debt itself, and not merely the time, is the matter of controversy, and will preclude the defendant from sustaining an action against the plaintiff for maliciously bringing his action.' In *Murson v. Austin*, 2 Philadelphia 116, Judge HARE said: 'Nothing, indeed, could be more unjust than to allow a defendant, who has been brought into court by legal process, to adjust or compromise the claim made against him, and then institute proceedings against the plaintiff, on the ground that the claim was without even a semblance

of foundation, in contravention of the well settled rule which prohibits two suits in every case, where the matter might be determined in one.' In *Mayer v. Walter,* 64 Pa. 283, it is held: 'When the proceeding has been terminated by a compromise an action for damages will not lie.' "

In *Alianell v. Hoffman,* 317 Pa. 148 (1934) 176 A. 207, plaintiff was arrested on charge of receiving stolen goods. Defendant being prosecutor, defendant agreed to withdraw the prosecution upon payment of $20 and the return of the goods, which plaintiff did. It was held that plaintiff has no cause of action for malicious prosecution. "By compromising and settling the criminal charges made against him, appellant destroyed an essential element of his case."

Quoting from 38 C. J. 443, 444: "Where the termination of a criminal prosecution or civil action has been brought about by the procurement of defendant therein, or by compromise and settlement, an action for malicious prosecution cannot be maintained."

As the rule is stated in 18 R.C.L. 25, Sec. 13: "It is generally held that where the original proceeding has been terminated without regard to its merits or propriety by agreement or settlement of the parties ...... there is no such termination as may be availed of for the purpose of an action for malicious prosecution. The reason for this rule is that where the termination of a case is brought about by a compromise or settlement between the parties, understandingly entered into, it is such an admission that there was probable cause that the plaintiff cannot afterwards retract it and try the question, which by settling he waived."

The alleged parol agreement set up in the Statement of Claim, that the liability on the bond should be restricted in accordance with the resolution of the board of plaintiff company authorizing the execution of the bond, cannot vary the terms of the written instrument. As was held in *Germantown Trust Co. v. Emhardt*

*No. 1)* 321 Pa. 561, 184 A. 457, in an opinion by Mr. Justice BARNES, p. 565: "The present Chief Justice, in *Speier v. Michelson,* supra, after a review of the authorities, stated the modern rule to be: 'Any parol agreement that subjects the obligation on the instrument to any condition or contingency, whether in person, time or amount, is ineffective, and the instrument is unconditional, unless fraud, accident or mistake was the means through which the instrument was procured.'" There is no averment in plaintiff's pleadings which brings the bond within the exception.

After careful consideration, we are of the opinion that the court below properly sustained the questions of law.

Judgment affirmed.