Robert F. HARVEY

v.

Elliott N. PINCUS, et al.

Civ. A. No. 78–457.

United States District Court,
E.D. Pennsylvania.

Oct. 15, 1982.

Robert F. Harvey, pro se.

Mark D. Turetsky, Norristown, Pa., for Pincus and Miller & Pincus.

## OPINION

LUONGO, Chief Judge.

This *pro se* civil action was filed on February 13, 1978 by plaintiff, Robert F. Harvey, against four private attorneys (three of whom he had retained), their law firms, and the Sheriff of Montgomery County. Summary judgment has previously been entered in favor of the Sheriff of Montgomery County and all defendants on plaintiff's civil rights claims. After summary judgment was entered on the civil rights claims, Harvey withdrew his remaining state-law claims against all defendants except Elliott Pincus and the law firm of Miller & Pincus (hereinafter referred to collectively as Pincus). Pincus now moves for summary judgment on the state-law claims. Fed.R.Civ.P. 56.

Before examining Pincus' attack on the merits, I will first consider his attack on this court's subject matter jurisdiction. Pincus' jurisdictional challenge is twofold: (1) that pendent jurisdiction was destroyed when summary judgment was granted in favor of defendants on the federal civil rights claims; and (2) that diversity jurisdiction is lacking because on February 13, 1978, the date this action was commenced, plaintiff and defendants were all citizens of Pennsylvania.

■ While I agree with Pincus that this court should not exercise pendent jurisdiction over plaintiff's state-law causes of action, *see Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187 (3d Cir. 1976), I am satisfied that plaintiff has established by a preponderance of the evidence that diversity jurisdiction existed at the time this action was commenced. *See Krasnov v. Dinan,* 465 F.2d 1298 (3d Cir. 1972).

■■ The sole jurisdictional fact in dispute is whether plaintiff was a New Jersey citizen on February 13, 1978, as he alleges in his complaint, or whether he was a citizen of Pennsylvania on that date.[1] Of course, for diversity purposes, citizenship means domicile; mere residence in a state is insufficient. Thus, "[t]he fact of residency must be coupled with a finding of intent to remain indefinitely." *Id.* at 1300. Harvey has met his burden as to each of these elements. In both his deposition and affidavit, he asserts that he moved from Pennsylvania to Cherry Hill, New Jersey on December 25, 1977, when he took up residence in the home of Lois Danoff. (Document 81, Harvey Affidavit, ¶ 2.1). Ms. Danoff's affidavit corroborates Harvey's assertions. *Id.,* Danoff Affidavit ¶ 11). In addition, to establish his intent to remain a New Jersey resident indefinitely, plaintiff has submitted several exhibits which indicate that, shortly after he established a New Jersey residence, he took steps to become a registered voter, obtained library privileges in Cherry Hill, and studied to become a notary

public in New Jersey. While this evidence is not overwhelming, it is nonetheless weightier than the rebuttal evidence offered by Pincus, which consisted of (1) two envelopes, with Pennsylvania return addresses, used by Harvey for the service of pleadings in this action, and (2) a petition in bankruptcy filed by Harvey in this court on January 31, 1978 and which lists his "address" as a post office box in Pennsylvania. (Document 67, Exhibits H–I). As for the envelopes with the Pennsylvania return addresses, I can only say that that evidence is ambiguous at best. It appears from all the pleadings served by Harvey early on in this action that he believed that a local mailing address was required for the maintenance of an action in this district. Moreover, those same envelopes bear Cherry Hill, New Jersey postmarks. The listing of a Pennsylvania address on the petition in bankruptcy is of even less significance. Fed.R. Bkrtcy.P. 116(a) provides:

a petition by . . . a natural person may be filed in the district where the bankrupt has had his principal place of business, residence, or domicile for the preceding 6 months or for a longer portion thereof in any other district.

Thus, if Harvey did become a New Jersey resident in December 1977, venue in the bankruptcy proceeding filed the next month would still have been properly laid in the Eastern District of Pennsylvania. Accordingly, given all of the proof on the issue of Harvey's citizenship, I find that he was a citizen of New Jersey on the date this civil action was commenced. This court, therefore, has diversity jurisdiction over the state-law claims set forth in the complaint.

Mindful that summary judgment should not be granted unless there is no genuine issue as to any material fact, Fed.R.Civ.P. 56(c); *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir. 1981), I now turn to the merits. The record on this motion consists of the pleadings, the affidavits of the parties with attached exhibits,

---

1. All defendants are citizens of Pennsylvania and the amount in controversy exceeds $10,- 000.

and the deposition of plaintiff. As gleaned from these materials, the undisputed facts relevant to this motion are as follows. On September 3, 1975, Ursula Harvey, then wife of plaintiff, brought suit in equity against plaintiff in the Court of Common Pleas for Montgomery County. *Harvey v. Harvey,* No. 75–14087. The suit was filed by Elliott Pincus seeking an accounting for property allegedly belonging to Mrs. Harvey and misappropriated by plaintiff from her Swiss bank account. (Document 67, Exhibit A). At the time Pincus filed the complaint in equity, he also petitioned, *ex parte,* for a writ of *ne exeat.* A judge of the Court of Common Pleas issued the writ, directing the Sheriff of Montgomery County "to restrain Robert F. Harvey and to compel him to post bond of $160,000.00 to secure his compliance with [the court's decree]." (*Id.,* Exhibit B).

Early on the morning of September 4, 1975, deputies from the Sheriff's office arrested Harvey pursuant to the court order, handcuffed him and transported him to the Montgomery County Prison. Later that day, a hearing was held before a judge of the Court of Common Pleas to determine whether the issuance of the writ was proper. Harvey, who was represented by counsel at the hearing, testified that he had withdrawn several ounces of gold and 55,-000 Swiss francs from Ursula Harvey's Swiss bank account by misrepresenting to bank officials that Ursula Harvey was seriously ill. Harvey also admitted that he had sold the gold and transferred all of the moneys to the account of two corporations, one of which was located in Liechtenstein. Harvey had sole authority to draw on the account of the Liechtenstein corporation. (*Id.,* Exhibit D). On the basis of this evidence, the common pleas court judge found that there was a "substantial risk" that plaintiff would "leave the jurisdiction for parts unknown" and that the funds which were the subject of the accounting action would be lost. (*Id.,* Exhibit C). Accordingly, the court concluded that the writ of *ne exeat* had properly issued, and ordered that Harvey be held in custody until he posted bond in the amount of $100,000. As an alternative to bond, the court stated that it would order Harvey's release if counsel could negotiate an arrangement to secure the funds pending the outcome of the litigation. (*Id.,* Exhibits C & D).

After the hearing, Harvey was taken to the Montgomery County Prison and held there overnight. The next day, Pincus and Harvey's counsel met with Harvey at the prison to discuss arrangements for securing the funds. Ultimately, it was agreed that the attorney representing Harvey in Liechtenstein would be directed to "block" the assets of the Liechtenstein corporation. (*Id.,* Pincus Affidavit; Document 72, Exhibit P–055). By order dated September 5, 1975, the court directed that plaintiff be released pursuant to this agreement. (Document 67, Exhibit E).

On November 13, 1975, Pincus was advised by telegram that the Liechtenstein attorney had been relieved of control over the blocked funds. (*Id.,* Exhibit F). Believing this to be a breach of the September 5, 1975 agreement and court order, Pincus immediately filed a petition for contempt with the Court of Common Pleas. In his prayer for relief, Pincus asked that the court declare Harvey in contempt and order that he be arrested and held subject to the court's order of September 4, 1975, which had confirmed the writ of *ne exeat.* (Document 72, Exhibit P–001). On the basis of Pincus' *ex parte* petition, the court issued a warrant for Harvey's arrest on November 14, 1975. (*Id.*).

Because Harvey's whereabouts were unknown at the time, the warrant for his arrest was not issued immediately. Instead, Pincus instructed the Sheriff of Montgomery County to hold the warrant until Harvey could be found within the county. (Document 67, Pincus Affidavit). On February 14, 1976, deputies of the Montgomery County Sheriff's office executed the arrest warrant by seizing plaintiff at his residence and incarcerating him in the Montgomery County Prison. For reasons not clear from the record, Harvey was released later that day. (Document 107, Exhibit 2.2.2). On April 23, 1976, a judge of

the court of common pleas granted plaintiff's uncontested "petition for striking of bench warrant and removal of petition for contempt." (Document 72, Exhibit P–001).

The equity action between plaintiff and Ursula Harvey was finally settled by written agreement of the parties on April 14, 1976. (Document 67, Exhibit J). A notice of settlement was later filed with the Court of Common Pleas on May 31, 1977. (Document 107, Exhibit 2.1.1).

On February 13, 1978, Harvey brought this action against Pincus and others based upon the aforementioned state-court litigation. As stated at the outset, while the complaint alleges causes of actions based upon state law and the federal civil rights laws, only the state-law claims against Pincus remain. The second amended complaint is 53 pages and several hundred paragraphs in length, and contains 22 "Counts." Not all of the counts, however, relate to Pincus. Of those counts of the complaint[2] which do refer to Pincus, only eight could conceivably serve as a basis for imposing liability on him under Pennsylvania state law.

Count III alleges that Pincus "maliciously and in bad faith, wrongfully initiated proceedings in Equity against plaintiff without probable cause" in the Court of Common Pleas for Montgomery County on September 3, 1975. (Complaint ¶¶ 3.2 to 3.5).

Count IV alleges that on September 3, 1975, Pincus "maliciously and in bad faith, wrongfully initiated ancillary civil proceedings against plaintiff without probable cause, in the manner of a 'Writ of Ne-Exeat'." (Id., ¶¶ 4.2, 4.5).

Count V alleges that Pincus "perverted" the writ of ne exeat "for coercive purposes akin to the imprisonment, for debt, without adjudication . . . [t]o 'compel' plaintiff to post excessively high 'bond' when confronted with incarceration in civil proceedings." (Id. ¶¶ 5.12 to 5.13).

Count VI alleges that on September 4, 1975, deputies from the Montgomery County Sheriff's office served papers on plaintiff "relevant to the . . . Equity action", arrested him and perpetrated a "battery" upon him "by placing him in handcuffs." (Id., ¶¶ 6.2 to 6.5).

Count XII alleges that Pincus coerced plaintiff into agreeing to "block" the funds in the Liechtenstein account through the use of threats that plaintiff would remain in jail "forever" if plaintiff did not agree. (Id. ¶¶ 12.2, 12.3).

Count XIV alleges that on November 4, 1975, Pincus "maliciously and in bad faith, wrongfully continued and maintained aforesaid civil proceedings against plaintiff through the initiation of a Petition for Contempt . . . [and] caused a bench warrant for the arrest of plaintiff to be issued. (Id., ¶¶ 4.2 to 14.5). It is further alleged that the bench warrant was "dismissed by adjudication in favor of plaintiff" on April 23, 1976. (Id., ¶ 14.9).

Count XV alleges that on February 14, 1976, deputies of the Montgomery County Sheriff's Office arrested plaintiff at his home and, in the process, committed a battery upon plaintiff by placing him in handcuffs and transporting him to the Montgomery County Prison, (Id. ¶¶ 15.4 to 15.16); that Pincus instigated this arrest pursuant to a stale bench warrant, (Id. ¶ 15.11); and that Pincus' action was designed "to coerce compliance with [Pincus'] demands, primarily for plaintiff's action and inaction in separate civil proceedings, in [settlement] negotiations which had begun only two days previously, on February 12th, 1976." ¶¶ 15.2 to 15.3, 15.9 to 15.10).

Count XXI alleges that Pincus conspired with each of plaintiff's attorneys "to injure, threaten, harass, oppress, intimidate, and terrorize plaintiff, . . . [and] to allow . . . Pincus to sequester funds and property for his client preventing possible valid claims by plaintiff, other Sovereigns [sic], and third parties." (Id. ¶¶ 21.2 to 21.3).

While Harvey has styled his state-law causes of action under the headings malicious use of process, malicious abuse of process, and negligence, I have not construed his pleadings so narrowly in con-

---

2. All references to the complaint are to the second amended complaint, Document 46.

sidering Pincus' motion. Nevertheless, under even the most liberal construction of the complaint, I conclude for reasons hereafter discussed that Pincus is entitled to summary judgment on the state-law claims.

Pincus argues that he is entitled to judgment as a matter of law on the state-law claims because (1) the statute of limitations has run on those claims; (2) the complaint fails to state a claim upon which relief can be granted; (3) plaintiff has failed to join an indispensable party; and (4) plaintiff's claims are barred by the doctrines of settlement, accord and satisfaction. I address only the first two bases of Pincus' motion.

■ Count III of the complaint—relating to Pincus' institution of the action in equity—alleges facts sufficient to state a cause of action for malicious use of process or, perhaps, malicious prosecution, but Pincus contends that these claims are barred by the statute of limitations. I agree. On February 13, 1978, when this action was commenced, Pennsylvania[3] applied a one-year statute of limitations to suits to recover damages for malicious prosecution or malicious use of civil process.[4] 12 P.S. § 51; *Jennings v. Shuman,* 567 F.2d 1213, 1216 (3d Cir. 1977); *Tarasi v. Pittsburgh National Bank,* 2 D & C 3d 406, 410 (Allegheny County 1977). Since the equity action was settled by written agreement on April 14, 1976, any claim based upon the wrongful institution of the proceedings in equity was surely time-barred by the time the action in this court was commenced.[5]

■ Even assuming the timeliness of the cause of action for malicious use of process, Pincus would still be entitled to summary judgment on that claim. To sustain this cause of action, Harvey would be required to prove that the equity proceedings were instituted without probable cause and that the proceedings were terminated in his favor. *Dumont Television & Radio Corp. v. Franklin Electric Co.,* 397 Pa. 274, 154 A.2d 585 (1959); *Curley v. Automobile Finance Co.,* 343 Pa. 280, 23 A.2d 48 (1941); *Casa Di Sardi v. Alpha Motors, Inc.,* 227 Pa.Super. 415, 323 A.2d 288 (1974). Since it is undisputed that Harvey agreed to pay his former wife a minimum of $67,000 to settle the equity action (Document 67, Exhibit J, ¶ 1), he cannot argue that those proceedings were terminated in his favor. *See* 1 F. Harper & F. James, *The Law of Torts,* § 4.4 (1956). Furthermore, Harvey has come forward with no evidence to establish the existence of a fact question on the probable cause issue. The Pennsylvania courts have frequently stated that probable cause depends "upon the honest and reasonable belief of the party prosecuting." *Byers v. Ward,* 368 Pa. 416, 421, 84 A.2d 307 (1951) (collecting cases). In suing for an accounting in the equity action, Pincus alleged that "Robert F. Harvey had surreptitiously acquired [Ursula Harvey's] sole and separate property at [the] Swiss Bank Corporation by means of fraud, misrepresentation and possible forgery." (Document 67, Exhibit A, ¶ 9). From the record before me on this motion, Pincus' allegations not only rest upon probable cause but appear to represent the actual state of affairs. During the hearing on the propriety of the issuance of the writ of *ne exeat,* Harvey admitted that he had obtained the property in his wife's accounts through misrepresentation

---

3. The parties assume that Pennsylvania law governs the substantive legal issues in this diversity action. Inasmuch as all relevant events occurred in Pennsylvania, I see no reason to challenge the parties consensual choice of law.

4. Pennsylvania's revised limitations statutes, *see* 42 Pa.Cons.Stat. §§ 5501 *et seq.,* became effective subsequent to the commencement of this action. Because the revised statutory scheme expressly provides that a time-barred claim cannot be revived by the new limitation statute, I do not consider the effect of the revised scheme on this action.

5. Although the equity action was formally terminated on May 31, 1977, when the notice of settlement was filed with the Court of Common Pleas, I conclude that Harvey's cause of action for wrongful use of process must be deemed to have accrued upon the date of settlement. At that time, all proceedings were complete. Hence, the filing of the notice was of importance only to the state court and cannot be treated as extending the accrual date of Harvey's cause of action.

and that he had refused to return the property to her. Given this evidence, Harvey cannot rest upon the vague allegations in his complaint that he had a valid defense to the accounting action. Fed.R.Civ.P. 56(e); *DeLong Corporation v. Raymond International, Inc.,* 622 F.2d 1135, 1139 (3d Cir. 1980).

 Like Count III of the complaint, Count IV appears to state a cause of action for malicious use of process or malicious prosecution. The sole distinction is that Count IV relates to Pincus' conduct in seeking the writ of *ne exeat.* This claim is also barred by the one-year statute of limitations in effect at the time. 12 P.S. § 51. At the very latest, all state-court proceedings involving the issuance of the writ of *ne exeat* were concluded by April 14, 1976, well over a year before this action was commenced. Even if the claim were timely, however, Pincus would still be entitled to summary judgment. The finding of the Court of Common Pleas that the writ of *ne exeat* had properly issued is prima facie evidence in the instant action that probable cause existed for the issuance of the writ. *See Miller v. Pennsylvania Railroad Co.,* 371 Pa. 308, 313, 89 A.2d 809 (1952); *Byers v. Ward, supra,* at 421. Once again, Harvey rests on his pleadings. He has come forward with no evidence to show that a question of fact exists as to the issue of probable cause.

The writ of *ne exeat* is also the subject of Count V of the complaint, but instead of charging malicious use of process, Count V charges Pincus with malicious abuse of process. These torts are plainly distinguishable:

Decisions in this state and in other jurisdictions have drawn a distinction between actions for *abuse* of legal process and those for malicious prosecution, which, when founded on civil prosecutions, are usually described as *malicious use* of civil process. The gist of an action for abuse of process is the improper use

of process after it has been issued, that is, a perversion of it: *Mayer v. Walter,* 64 Pa. 283; Annotation, 80 A.L.R. 581. "An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it . . . On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated . . . other than its proper effect and execution." *Mayer v. Walter, supra,* p. 285; *Johnson v. Land Title B. & T. Co.,* 329 Pa. 241, 242, 198 A. 23. Malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued. All the analogies of an action for a malicious arrest belong to an action for malicious use of civil process.

*Publix Drug Co. v. Breyer,* 347 Pa. 346, 348–49, 32 A.2d 413 (1943). *See also Jennings v. Shuman,* 567 F.2d 1213, 1217–18 (3d Cir. 1977); *Blumenfeld v. R.M. Shoemaker Co.,* 286 Pa.Super. 540, 429 A.2d 654, 656 n. 3 (1981).

 There are two basic elements to the cause of action for malicious abuse of process: an ulterior motive and a use of the process for a purpose other than that for which it was designed.[6] *Sachs v. Levy,* 216 F.Supp. 44, 47 (E.D.Pa.1963). It is immaterial that the process was issued on probable cause. *Mayer v. Walter,* 64 Pa. 283, 286 (1870). Similarly, a plaintiff in a malicious abuse case need not show that the prior proceedings were terminated in his or her favor. The cause of action accrues immediately upon the improper use of the process. *Fenton Storage Co. v. Feinstein,* 129 Pa.Super. 125, 130, 195 A. 176 (1937); *Whelan v. Miller,* 49 Pa.Super. 91, 99–100 (1912). There is one other important distinction between malicious use and malicious abuse. Actions for malicious use of process are subject to a one-year statute of limitations, whereas the limitations period on actions

6. At the time this action was brought, Pennsylvania also required the plaintiff in an abuse of process case to prove a seizure of his or her

person or property. *See Blumenfeld v. R.M. Shoemaker Co., supra.* Plaintiff has surely satisfied this element of his cause of action.

for malicious abuse of process is two years. *Jennings v. Shuman, supra.*

Applying these legal principles to Count V of the complaint, there can be no doubt that Pincus is entitled to judgment as a matter of law on the abuse of process claim. Harvey alleges in Count V that Pincus "perverted" the writ of *ne exeat* for "coercive purposes akin to the imprisonment for debt" in order to " 'compel' plaintiff to post an excessively high 'bond'." (Complaint ¶¶ 5.12 & 5.13). The uncontroverted facts set forth earlier in this opinion establish that Harvey was not imprisoned for his failure to pay a debt. Pincus sought the writ of *ne exeat* in conjunction with the action for an accounting for the property misappropriated by Harvey from Ursula Harvey's Swiss bank account. The Pennsylvania Supreme Court has held that "[w]here ne exeat issues ancillary to an equity action, ... wherein the claim is based on fraud rather than contract, it does not run afoul of the statutory prohibition against imprisonment for debt." *Elkay Steel Co. v. Collins,* 392 Pa. 441, 450, 141 A.2d 212 (1958). Furthermore, the very purpose of the writ is to confine "a person to the limits of the jurisdiction of the court until he has satisfied the ... claim or given bond for the satisfaction of the decree of the court." *Id.* at 446–47, 141 A.2d 212. There simply is no triable issue of fact on the propriety of Pincus' use of the writ of *ne exeat.* Even if there were a fact issue, the abuse of process claim would be barred by the statute of limitations. The alleged improper use of the writ of *ne exeat* was complete by September 5, 1975, more than two years before the instant action was commenced.

The allegations in Count VI of the complaint pertain to the September 4, 1975 arrest and incarceration of plaintiff by deputies of the Montgomery County Sheriff's Office. Given a liberal reading, these allegations do suggest a basis for imposing liability upon the arresting officers for false arrest, false imprisonment, assault and battery.[7] Nevertheless, because the arrest and incarceration were directed by a judge of the Court of Common Pleas, Pincus cannot be held responsible for the actions of the arresting officers. *See Lentz v. Raum,* 59 Pa.Super. 260 (1915). This principle has been aptly explained by the late Professor Prosser:

> If the defendant complies with the formal requirements of the law, as by swearing out a valid warrant, so that the arrest of the plaintiff is legally authorized, the court and its officers are not his agents to make the arrest, and their acts are those of the law and the state, and not to be imputed to him. He is therefore liable, if at all, only for a misuse of legal process to effect a valid arrest for an improper purpose.

W. Prosser, *Handbook of the Law of Torts,* 49 (1971). *See also Restatement (Second) of Torts* § 45A comment c (1965); F. Harper & F. James, *supra,* at § 3.9.[8]

Even if Pincus could be held vicariously liable for the actions of the arresting officers, any claim plaintiff may have based upon the officers' conduct would be barred by the statute of limitations. Because the officers "purport[ed] to act for the purpose of securing the administration of the law," the one-year statute of limitations applicable to false arrest, not the two-year limitations on actions for false imprisonment, would govern the arrest and incarceration claims. *Gagliardi v. Lynn,* 446 Pa. 144, 149, 285 A.2d 109 (1979). Furthermore, since the alleged assault and battery was inextricably intertwined with the arrest, the assault and battery would be subsumed into the false arrest for statute of limitations purposes. *Id.* at 150, 285 A.2d 109; *see*

---

7. It is extremely unlikely that the arresting officers could be liable for effecting the arrest. Not only does it appear that the statute of limitations has run, *see Gagliardi v. Lynn,* 446 Pa. 144, 285 A.2d 109 (1977), but it also seems that the arrest was privileged in all respects,

*see Restatement (Second) of Torts* §§ 122–132 (1965).

8. Plaintiff's misuse of legal process claims, Counts IV and V of the complaint, were disposed of earlier in this opinion.

*Polite v. Diehl,* 507 F.2d 119, 122–23 (3d Cir. 1974) (*en banc*); *Kedra v. City of Philadelphia,* 454 F.Supp. 652, 672–73 (E.D.Pa.1978). Hence, any claim based upon the facts alleged in Count VI is barred by the statute of limitations.

In Count XII, Harvey alleges that Pincus threatened that he (Harvey) would remain in jail forever if he did not agree to block the assets of the Liechtenstein Corporation during the pendency of the action in equity. These threats were allegedly made on September 5, 1975, during negotiations between Pincus, Harvey and Harvey's attorney. Whether this claim is read as one for false imprisonment or abuse of process, it is barred by the two-year statute of limitations. *See* 12 P.S. § 31; *Jennings v. Shuman, supra.*

Aside from the statute of limitations, there is nothing alleged in Count XII which requires a trial. Harvey's confinement was not the result of threats by Pincus; his confinement and the condition for his release had been imposed by the Court of Common Pleas. Under the court's order, Harvey could obtain his release by either posting $100,000 bond or by agreeing to secure the moneys in dispute in the equity proceedings until such time as those proceedings were resolved. Pincus' alleged threats merely reiterated the terms of the court's order and therefore cannot serve as a basis for a claim of false imprisonment or a claim for abuse of process. Once again, to quote *Elkay Steel Co. v. Collins, supra,* the very purpose of the writ of *ne exeat* is to "confine[ ] a person to the limits of the jurisdiction until he has satisfied the ... claim or given bond for the satisfaction of the decree of the court." 392 Pa. at 446–47. Because agreement to secure the funds had been suggested by the Court of Common Pleas as an alternative to bond, Pincus' alleged threats do not evidence any abuse of process.

> Everyone has a right to use the machinery of the law, and bad motive does not defeat that right. There must be a further act done outside the use of the process—a perversion of the process. If he

uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of the process . . . .

*Fenton Storage Co. v. Feinstein,* 129 Pa.Super. 125, 130, 195 A. 176 (1937) (quoting *Hauser v. Bartow,* 273 N.Y. 370, 7 N.E.2d 268 (1937)).

Count XIV arises out of Pincus' institution of contempt proceedings against Harvey and appears to state a cause of action for malicious use of process. As discussed earlier, when the instant suit was brought, Pennsylvania applied a one-year statute of limitations to actions for malicious use of process. Applying the one-year period to the facts alleged in Count XIV, it is obvious that the claim is time-barred. By plaintiff's own admission, the contempt proceedings were dismissed and the bench warrant dissolved on April 23, 1976. Thus, the statute of limitations on Harvey's claim had expired nearly ten months before the commencement of this action.

Count XV relates to the February 14, 1976 arrest and incarceration of Harvey by deputies of the Montgomery County Sheriff's Office. The deputies made the arrest in execution of the bench warrant issued by the Court of Common Pleas approximately three months earlier. Plaintiff alleges that Pincus instigated this arrest and that the warrant was stale. For reasons discussed earlier in reference to Count VI of the complaint, the actions of the deputy sheriffs cannot be imputed to Pincus. The deputies were not the agents of Pincus. Furthermore, even assuming the existence of an agency relationship, any claim based upon the arrest for false imprisonment, false arrest, assault or battery is barred by the statute of limitations. *See Gagliardi v. Lynn, supra.*

Harvey also alleges in Count XV that Pincus instigated the arrest of the bench warrant for the purpose of coercing a settlement of the accounting action. This allegation can be read as stating a cause of action for abuse of process. As such, the claim would not be barred by the statute of

limitations. A claim for abuse of process is governed by a two-year statute of limitations, *Jennings v. Shuman, supra,* and accrues when the process is used for an improper purpose, *Fenton Storage Co. v. Feinstein, supra.* Accepting the truth of plaintiff's allegation that he was arrested on February 14, 1976 for the purpose of influencing ongoing settlement negotiations, the abuse of process claim accrued less than two years before the commencement of this action. Accordingly, unlike the several other claims alleged in the complaint, the abuse of process claim set forth in Count XV is not barred by the statute of limitations.

 While the abuse of process claim in Count XV may be timely, no material issue of fact has been shown to suggest that Pincus instigated the arrest on the bench warrant for the purpose of coercing a settlement of the accounting action. In his affidavit, Pincus states that, unbeknownst to him, his client, Ursula Harvey, had requested the sheriff to serve the bench warrant. Pincus did not learn of Mrs. Harvey's actions until at least two days after the arrest and after Harvey had been released from custody. Absent evidence of inducement or encouragement, an attorney cannot be held liable for the tortious conduct of his client. *Adelman v. Rosenbaum,* 133 Pa.Super. 386, 3 A.2d 15 (1938). If anyone was guilty of abuse of process, it was Ursula Harvey, not Pincus.[9] Of further significance is the fact that, once he learned of the arrest, Pincus took no action to contest plaintiff's motion to strike the bench warrant. In sum, on this record, there is no evidence whatsoever that Pincus used the bench warrant to influence pending settlement negotiations. The bare allegations in the complaint are insufficient to create a fact question on this issue. *DeLong Corporation v. Raymond International, Inc.,* 622 F.2d 1135, 1139 (3d Cir. 1980).

██ Finally, in Count XXI, Harvey alleges that Pincus conspired with the three attorneys retained by Harvey "to injure, threaten, harass, oppress, intimidate, and terrorize plaintiff." (Complaint ¶ 21.2). Liberally construed, this allegation may be sufficient to state a claim for intentionally causing or assisting an agent to violate a duty to his principal. *See Restatement (Second) of Torts* § 312 (1965). There is not, however, the least bit of factual support in the record for such a claim. Pincus avers that he was acting solely for the benefit of his client and at no time conspired with plaintiff's attorneys to injure plaintiff. Moreover, Harvey was represented by three different attorneys over three different periods of time. The last of these attorneys was retained through a referral from the Montgomery County Bar Association. At most, the record shows that Harvey was displeased with the representation he received from his attorneys. There is nothing to show that Pincus influenced the independent judgment of Harvey's counsel. Pincus cannot, therefore, be held liable for the actions of plaintiff's own attorneys. *See Sachs v. Levy,* 216 F.Supp. 44, 46 (E.D. Pa.1963).[10]

Accordingly, for reasons set forth in this opinion, Pincus is entitled to judgment as a matter of law on the state-law claims pleaded in plaintiff's complaint.

---

**9.** Plaintiff released all claims he may have had against Ursula Harvey when he agreed to the April 14, 1976 settlement of the accounting action. (Document 67, Exhibit J, ¶ 7).

**10.** Pincus is also named in Counts VII–XI, XIII, and XVI ·XX. All of the allegations in these counts, however, are either repetitious of those discussed thus far, or pertain to the actions of the attorneys who represented plaintiff in the state court proceedings. Plaintiff has withdrawn his claims against his own former attorneys.