# Summit Hosiery Co. *v.* Gottschall, Appellant.

*Execution—Wrongful abuse of civil process—Interpleader.*

1. The basis of an action for wrongful levy and execution, is the employment of civil process for an unlawful act clearly outside of the authority conveyed by the express terms of the writ.

2. Such an action may be brought although plaintiff had not instituted a sheriff's interpleader or failed to proceed with one.

*Corporation—Transfer of property to corporation—Employment of former owner by the company—Fraud.*

3. When an individual conducting a business transfers his property to a new corporation composed of himself and third persons, and the company's name is placed on the doors, windows, letter- and bill-heads and in the telephone book, title passes to the company as against the former owner's creditors, and the mere fact that such owner is employed by the company as its manager, secretary and treasurer, is immaterial.

4. Where a creditor of a former owner does not proceed within the time required by the Bulk Sales Act of May 23, 1919, P. L. 262, he cannot complain of such transfer.

Argued January 5, 1928. Before Moschzisker, C. J., Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 234, Jan. T., 1927, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1925, No. 5459, on verdict for plaintiff, in case of Summit Hosiery Co. v. Meyer Gottschall. Affirmed.

Trespass for wrongful levy and sale. Before Finletter, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $3,776. Defendant appealed.

*Error assigned,* inter alia, was refusal of judgment for defendant n. o. v., quoting record.

*Robert Mair,* with him *Wayne P. Rambo* and *Ormond Rambo,* for appellant.—A delivery of personal property must follow as well as accompany the transfer of title and a sale attended with a retained possession by the vendor is fraudulent in law, however good the intent of the parties may have been: Bowersox v. Weigle & Myers, 77 Pa. Superior Ct. 367; Barnett v. Cain, 88 Pa. Superior Ct. 106; Delphia Knitting Mills Co. v. Richards, 62 Pa. Superior Ct. 9; Knitting Mills v. Mfg. Co., 12 Pa. Superior Ct. 346; Montgomery Webb Co. v.

Dienelt, 133 Pa. 585; Lehr v. Brodbeck, 192 Pa. 535; Kendig v. Binkley, 10 Pa. Superior Ct. 463; Milne v. Henry, 40 Pa. 352.

*L. Stauffer Oliver,* for appellee.

OPINION BY MR. JUSTICE KEPHART, January 30, 1928:

Plaintiff recovered damages for wrongful levy and sale of its property under an execution issued by defendant against John E. Quinn. The circumstances leading up to the sale are these. Quinn, engaged in the manufacture of stockings, had borrowed money from Gottschall to continue the business, and had secured through a bailment lease from the Lehigh Silk Hosiery Company the machinery in question. Quinn owed Gottschall for money advanced, $7,800, and the Lehigh Hosiery Company, $2,500. Since business was not prospering, he sold it to Lurker for $3,000. Lurker paid $2,500 down, and out of this Quinn paid Gottschall $1,500 and $500 on the machinery. The reductions made the amount due Gottschall, $6,300, and for the machinery, $2,000. Quinn later cleared the title to the machinery by using his own funds and the final payment of $500 that Lurker owed him. Lurker, having taken possession of the business, two months later organized a corporation called the Summit Hosiery Company. To that company title to the machinery and all its effects was transferred, and the stock of the company, 4,600 shares, was issued to Lurker, Gallen, Shea, and about twelve other persons; Quinn was given a small block of stock. Lurker became president of the company and Quinn was made secretary, treasurer, and manager, at a salary of $30 a week. The company, having taken over the lease, paid the rent, carried on the business, and made and sold stockings for several months. Signs bearing the new name were put on the plant walls, stairway and on the office door, and remained there until after the sheriff's sale. Telephones, bill-heads, letter-heads and advertisements were

all in the name of the Summit Company. The questions of the good faith of the sale and of the adequacy of the price at which Quinn sold the machinery were submitted to the jury, and they found a verdict for plaintiff.

Gottschall brought suit against Quinn, and obtained judgment for want of an affidavit of defense. When execution was issued, the machinery was seized. Plaintiff tried to institute interpleader proceedings, but, because of its inability to obtain a bond, that proceeding was abandoned. The present suit to recover damages for an abuse of process then followed. The basis of the action is the employment of process for an unlawful object, in doing an act clearly outside the authority conveyed by the express terms of the writ: Mayer v. Walter, 64 Pa. 283; Siegel v. Netherlands Co., Inc., 59 Pa. Superior Ct. 132. The institution of a sheriff's interpleader, or the failure to proceed with one, will not avail this defendant; interpleader proceedings are for the protection of the sheriff, and even where such proceedings are pending, an action of trespass is allowed so that a claimant may secure redress for injury suffered from the unlawful seizure. From Birch v. Conrow, 161 Pa. 118, to Siegel v. Netherlands Company, supra, it has been the unquestioned law that even though a claimant voluntarily appeared in interpleader proceedings and filed his statement and went to trial, he could recover in an action of trespass for the wrongful use of a civil process.

Despite the jury's finding that the price paid for the machinery by Lurker was adequate, and that there was no actual fraud, appellant asserts that there was fraud in law of such a gravity as to prevent recovery. It is urged that since Quinn was made general manager, secretary and treasurer of the new company, and placed in charge of its business, having been before the formation of the new corporation sole owner of the business, he was to all outward appearances since incorporation the owner of the business and the machinery. Defendant submits the legal proposition that an individual cannot

lawfully dispose of his assets to a corporation to the prejudice of creditors, even though no actual fraud is intended, where he is substantially the owner of all the stock of the company. As stated in Delphia Knitting Mills Co. v. Richards, 62 Pa. Superior Ct. 9, 12, "When an individual or corporation transfers its property to a new corporation substantially owned and controlled by the transferor, the new corporation takes the property subject to the claims of the nonassenting creditors: Montgomery Webb Co. v. Dienelt, 133 Pa. 585; The Pennsylvania Knitting Mills of Reading v. Bibb Manufacturing Co., 12 Pa. Superior Ct. 346." This is undoubtedly true where the new corporation is composed of substantially the same persons who sell the property. They cannot thus defeat the claims of their creditors, nor can they avoid their obligation, even though a third party intervenes as transferee, who in turn resells to a corporation composed of persons in identity with the transferors. The new corporation will be compelled to complete the obligations of the former owner of the property: Atlas Portland C. Co. v. Am. Brick & Clay Co., 280 Pa. 449, 456, 457. But the fact that the original vendor sells to a third person, who later sells to a corporation wherein the original vendors may be members, will not be decisive or even pursuasive of wrong; nor will the further fact that the vendor is engaged as the active manager of the company.

There being no fraud in fact, the composition of the new company and the effort to show good faith in the transfer have an important, if not a conclusive, bearing. Here the persons who comprised the new company were strangers to the indebtedness of Quinn and his interests; they were independent of Quinn and clearly negatived the idea of identity of persons as vendor and vendee. This being so, there is no reason why the company should not employ the debtor as the manager, or salesman, to conduct the business after the sale has been properly made. There could be no further question if

the property had been moved to another house; that it was not is immaterial. Change of possession does not necessarily mean removal of the property. There may be a change of possession in the change of ownership of the land where the property is located.

When Lurker purchased the property, he took actual possession. When the new company was organized, and the machinery was resold to it, the company's name was placed on the doors, windows, letter-heads, bill-heads and in the telephone book. These acts completed the change so far as the evidences of ownership are concerned. It had the same effect as if the machinery had been taken away, transferred to Lurker, and brought back to the same place. The law does not require vain things to be done.

If a corporation purchases property, it is subject to the same law with regard to change of possession as an individual would be: The Pennsylvania Knitting Mills Co. of Reading v. Bibb Manufacturing Co., 12 Pa. Superior Ct. 346. Consequently, it is not immune merely because of its corporate form. When it places its sign on the property, takes over the lease and performs acts only an owner can do, the mere fact that the former owner is employed as manager, secretary and treasurer is immaterial. It may become necessary for the purchaser to keep such man; he knows all the details of the business and can keep it floating until the company has been sufficiently far advanced to make a change in its management, if desired. When this is done, the company must, of course, take care to see that the law's requirements as to notice of change of possession, or physical change of possession have been actually fulfilled. We feel as did the trial judge and the learned court below, that in the case at bar, these requirements were met.

The view expressed is not in conflict with the recent cases of Wendell v. Smith, 291 Pa. 247, and Root v. Republic Acceptance Corporation, 279 Pa. 55, in

which Mr. Justice SCHAFFER outlined the law in regard to change of possession as between automobile dealers and finance companies. We have no intention of departing from the rule of these cases; the facts of the case now before us are radically different.

Some mention has been made of the Bulk Sales Act of 1919, P. L. 262. As the appellant did not proceed within the time required by that act, he is in no position to complain.

Judgment of the court below is affirmed.