Shane, Appellant, *v.* Gulf Refining Company et al.

Argued September 29, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Abraham Wernick,* and with him *Rowland C. Evans* and *Hyman Shane,* for appellant.

*James L. Baxter,* for appellees.

Opinion by James, J., July 13, 1934:

This is an action against a constable and judgment creditor to recover damages for a levy alleged to have been improperly made on plaintiff's goods on a judgment entered against Louis Oistatcher, plaintiff's father-in-law.

Constable Ashbrook, who also conducted a collection agency, obtained judgment on December 3, 1931, on behalf of the Gulf Refining Company, against Louis Oistatcher for oil delivered to the home of Oistatcher. After several demands upon Oistatcher at his home at 542 South Melville Street, his daughter, wife of the plaintiff, in a conversation with the constable and in a subsequent letter indicated that she was the daughter of Oistatcher and that she would pay the debt which her father owed, and, in fact, did send a check for $10 in part payment.

Plaintiff and his wife reside at 403 South 46th Street. There is no evidence that Oistatcher ever lived at that address. Defendants offered evidence that they were informed by Mrs. Shane that Oistatcher was living at 403 South 46th Street. This is contradicted by the letters in evidence written by Shane to Ashbrook and the Gulf Refining Company and Mrs. Shane's testimony. Since the jury found for plaintiff, his evidence must be accepted as true.

A levy was made on December 28, 1931 upon the goods at 403 South 46th Street by a deputy constable in spite of Mrs. Shane's statement at the time that

Oistatcher did not live there and that none of his property was to be found on the premises. On December 29, 1931, Ashbrook wrote a letter to Oistatcher addressed to 403 South 46th Street, stating that a sale of goods would be held on January 4, 1932. On December 30, 1931, Shane wrote to Ashbrook stating that Oistatcher did not live at 403 South 46th Street and that none of his property was to be found there. On January 9, 1932, plaintiff wrote to Ashbrook protesting against the levy and drawing his attention to the fact that he was attempting to impose a legal liability upon a married woman as a guarantor or surety upon property which belonged to the plaintiff. Plaintiff wrote similar letters dated December 30, 1931 and January 5, 1932 to the Gulf Refining Company. On January 7, 1932, the Gulf Refining Company wrote acknowledging the letter of January 5th, and stating that they had notified their attorneys. On January 8th, a letter from Samuel B. Ashbrook, acknowledging letters directed to them and communication addressed to Gulf Refining Company, stated that ''after the assumption of the obligation on the part of Evelyn O. Shane we feel justified in proceeding with execution on property at premises of 403 South 46th Street.'' On January 12, 1931, S. B. Ashbrook wrote plaintiff in which he stated, ''We have your communication of January 9th which we have submitted to the attention of our clients who have instructed us to proceed with action in this case . . . . . . Hence we are certain execution against the property at 403 S. 46th will be held as legal by the courts . . . . . . Failing to hear from you we will proceed as stated above.''

Although some question was raised as to whether Ashbrook received and answered the letters, they were undoubtedly handled through his office by himself or his employees.

On January 11, 1932, a handbill was posted by a

deputy constable of Ashbrook on the premises, advertising that the goods of Louis Oistatcher would be sold on January 14, 1932. Plaintiff filed no property claim, but defendant abandoned the execution. The bill was torn off the premises by plaintiff's wife soon after it was posted and no further steps were taken.

On the trial a verdict was rendered against both defendants in the sum of $400. The court entered judgment n. o. v. for defendants on the sole ground that plaintiff failed to make demand as required by the Act of March 21, 1772, 1 Sm. L. 364, Sec. 6.

The Act of March 21, 1772, Sec. 6, (42 PS 1016), declares that "...... no action shall be brought against any constable ...... for anything done in obedience to any warrant, under the hand and seal of any justice of the peace, until demand hath been made, ...... by the party or parties intending to bring such action, ...... demanding ...... copy ...... of such warrant ...... and the same hath been neglected or refused for the space of six days after such demand ......"

In passing upon this section, Judge HEAD in Ford v. Campbell, 51 Pa. Superior Ct. 288, 290, said, "It will at once be observed that the purpose of this act was to furnish some measure of protection to a constable for doing that which obedience to his writ required him to do. It was evidently in the legislative mind that it was too much to ask of a constable or other subordinate executive officer that he should, at his peril, before undertaking to execute his writ, determine whether or not the magistrate who issued it had jurisdiction of the cause; whether the judgment finally rendered was the result of a proceeding in every way regular; whether or not it had been temporarily superseded by appeal or otherwise so that execution should be stayed, and other like questions. With all of these the constable had no concern, and it was

thought proper that he should not be punished in damages in any case where the exhibition of his warrant would show that he had simply acted in obedience to it. In such case the responsibility for any wrong that resulted from his proper execution of his writ should be placed on the magistrate who issued it rather than upon the executive hand of the law, to wit, the constable who undertook to execute it according to its tenor and effect. The language of the statute shows that the reason of the notice therein provided was that, by the exhibition of his warrant, the constable could satisfy the party plaintiff that the injury complained of could not justly be ascribed to him." Citing further from this case (p. 393): "In Com. v. Yeisley, 6 Pa. Superior Ct. 372, President Judge RICE, after quoting the section of the statute here relied on, thus interprets it: 'The purpose of this provision becomes plain when we look at the context. It was to protect constables in acts done in obedience to writs placed in their hands, notwithstanding a defect of jurisdiction in the justice or justices issuing them, and to inform the party aggrieved by such acts where to place the responsibility. The design of the section was to make the justice exclusively answerable for his own defaults. Where a constable has pursued his warrant, he can be affected with want of jurisdiction in the magistrate, only where he is sued alone, having, after a proper demand, refused for the space of six days to furnish a copy of the warrant.' "

In laying down the rule as found from the interpretation of the cases construing the section of the statute herein involved, Judge HEAD in the case of Ford v. Campbell, supra, at page 393, finds the following rule: "Applying the doctrine to be drawn from the language of the statute itself, as well as from all of these authorities, we think the conclusion plain that the only case within the purview of the statute, where

the serving of the notice is a condition precedent to the writ to begin an action, is where the exhibition of the warrant furnishes a defense for the constable under the operation of the statute.'' This rule was followed in the recent case of Jadwin v. Bell, 108 Pa. Superior Ct. 543, 165 A. 511.

No question is raised as to the regularity of the entry of the judgment against Louis Oistatcher but the writ of execution delivered to the constable directed him to levy upon the goods and chattels of the said Louis Oistatcher and ''...... expose the same to sale by public vendue.'' It did not authorize him to levy upon the goods and chattels of a stranger to the writ, the goods and chattels of Hyman Shane, and therefore the requirements of the Act of 1772 did not apply to the present action. The wrong committed by the defendants was not by reason of an illegal judgment or the lack of jurisdiction of the magistrate but consisted in an illegal levy upon the goods and chattels of a stranger to the writ. The act of the defendant in pursuance of the writ of execution is clearly not such a case as brings the officer within the protection of the statute and requires the injured party to do what would be a manifestly useless thing.

The court below in entering judgment n. o. v. relied upon Com. v. Warfel, 157 Pa. 444, 27 A. 763, the facts of which brought it within the Act of 1772. That case was an action against a constable for levying upon and afterwards selling certain personal property of the defendant upon an execution issued upon a judgment which was alleged to be void, wherein a certiorari had been issued out of the common pleas at the time of issuance of the execution and the dates upon the summons had been altered. Under these circumstances the Act of 1772 clearly applied. Under the facts in the present case the act did not apply.

The facts in the present case establish an abuse of

legal process. No question is raised as to the regularity of the writ but that it was used for the purpose of forcing another person than the defendant in the writ to pay the judgment.

An abuse of legal process is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in doing an act clearly outside the authority conveyed by the express terms of the writ: Mayer v. Walter, 64 Pa. 283, 285; Siegel v. Netherlands Co. Inc., 59 Pa. Superior Ct. 132; Summit Hosiery Co. v. Gottschall, 292 Pa. 464, 467, 141 A. 298.

The testimony clearly established that the levy was made and the notices of sale were posted with knowledge that the goods levied upon were not the property of the defendant in the writ. Not only was the knowledge brought home to the constable but the plaintiff in the writ also acquiesced and approved the action of the constable.

"It is a well established rule that he who encourages, incites and induces another to commit a trespass or indemnifies him for doing it is equally liable with him who directly commits the act: McGill v. Ash, 7 Pa. 397; Welsh v. Cooper, 8 Pa. 217; Deal v. Bogue, 20 Pa. 228; McMurtrie v. Stewart, 21 Pa. 322; and an action may be maintained against all who participate in the trespass or against one or more of them: Burk v. Howley, 179 Pa. 539." Morrison v. Nipple, 39 Pa. Superior Ct. 184, 187.

We are convinced that the testimony established sufficient evidence from which the jury were warranted in finding a verdict for the plaintiff.

The judgment is reversed and is now ordered to be entered for the plaintiff on the verdict on payment of the jury fee.