Smith *v.* Houghwot, Appellant.

Argued May 6, 1938. Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER and RHODES, JJ.

*Allison D. Wade,* for appellant.

*William Glassman,* for appellee,

502

OPINION BY BALDRIGE, J., September 28, 1938:

This appeal is from a judgment obtained by Henry Smith against Daniel Houghwot, a constable, for levying upon, and selling under an execution against E. O. Zimmerman, six cows alleged to have been owned by Smith. The jury rendered a verdict for plaintiff in the sum of $248.60, stating therein "defendant not guilty of malicious intent."

The facts may be summarized as follows:

Smith entered into a bailment lease agreement with O. E. Rodda covering certain cattle, including the six cows, the subject of this dispute. Subsequently, Smith repossessed the cows and left them temporarily with E. O. Zimmerman until he could obtain a permit to transfer them to his own farm in New York state. A creditor of Zimmerman obtained a judgment against him and issued an execution. The writ was given to Houghwot, the appellant herein, who levied upon the cattle found on the farm in possession of and operated by Zimmerman. Learning of the constable's action, Smith gave him notice of his ownership of the cows. Thereupon, Houghwot consulted an attorney who advised him to proceed with the sale of the cattle, as they were in possession of the defendant in the writ. Plaintiff did not bring any action until more than a year after the defendant held his sale.

We must assume the title to the cows was in the plaintiff and that defendant sold them, after he had notice thereof, as the jury so found.

The defense relied upon is that the action was not "commenced within six months after the act committed," as provided in section 7 of the Act of March 21, 1772, 1 Sm. L. 364 (42 PS §1017). The court below held that this defense was not available, as the defendant, in selling the plaintiff's cows, was not acting in obedience to his warrant, but wholly outside of it, and, therefore, he was not entitled to the pro-

tection of the six months' limitation. We are unable to concur in that conclusion.

We may state, preliminarily, that it has been held that the Act of 1772, supra, should be construed favorably to a constable, who is "not supposed to be conusant of the law," if he endeavors in good faith to carry out what he reasonably believes to be the authority granted him in his warrant: *Varley v. Zahn,* 11 S. & R. 185, 188.

Section 6 of the act (42 PS §1016) declares that "no action shall be brought against any constable or officer, or any person or persons acting by his or their order, and in his aid, for anything done in obedience to any warrant ...... until demand hath been made ...... by the party or parties intending to bring such action ...... of the perusal and copy of such warrant ...... and the same hath been neglected or refused for the space of six days after such demand."

The seventh section (42 PS §1017) provides: "No action shall be brought ...... against any constable or any other officer, or person or persons acting as aforesaid, unless commenced within six months after the act committed."

It is apparent that the primary purpose of the sixth section is to protect a constable when he acts in obedience to his warrant and relieve him of liability for want of jurisdiction in the justice issuing the writ, or for any irregularity in the proceedings: *Ford v. Campbell,* 51 Pa. Superior Ct. 388; *Com. v. Warfel,* 157 Pa. 444, 27 A. 763. If, on the other hand, a constable wilfully makes a false return or commits a fraudulent act, he is individually liable; then he is not acting in obedience to his warrant, for it furnishes no authority for such action, and the six months' limitation does not apply: *Com. v. Yeisley,* 6 Pa. Superior Ct. 273; *Pollock v. Ingram,* 6 Pa. Superior Ct. 556; *Ford v. Campbell,* supra.

The seventh section has a different purpose from the sixth. It stipulates a certain period within which any action may be brought against a constable "acting as aforesaid." Does that mean a constable must be acting strictly "in obedience" to his writ for the six months' limitation to apply?

In *Lantz v. Lutz,* 8 Pa. 405, relied upon by the appellee, the facts are quite dissimilar. There, a constable was guilty of wilful misconduct, not an involuntary trespass, as he acted in open contempt of his warrant in permitting a defendant charged with fornication and bastardy to escape following his arrest. The action was brought one year after the escape. Mr. Chief Justice GIBSON, speaking for the court, said (p. 406) : "The defence is rested on the seventh section of the act of 1772, which limits the period of bringing certain actions against justices and constables, to six months from the time of the wrong. The design of that act, however, is to defend the officer against the consequences of involuntary trespasses, not against the consequences of wilful misconduct. ...... The seventh section, insecurely relied on here, provides 'that no action shall be brought against any justice of the peace for anything done in the execution of his office, or against any constable, or any other officer or person *acting as aforesaid'*—that is, in obedience to his warrant as specified in the preceding section—'unless commenced within six months after the act committed.' "

The English courts, in construing the statute 24 George II, c. 44, which is almost a literal copy of our statute of 1772 (sections 6 and 8 of that statute corresponding to sections 6 and 7 of our act) have held that the six months' limitation applies regardless of whether the constable is acting technically in obedience to the writ, as long as he attempts to execute it in good faith. *Parton v. Williams,* 3 B. & Ald. 330, 106 English Reprint 684 (1820), was, as here, an action of

trespass brought against a constable for taking and levying upon plaintiff's goods on a warrant against another. ABBOTT, C. J., in the course of his opinion, said (Reprint p. 685) : "The Legislature manifestly had very different objects in view in the 6th and 8th sections of the statute upon which the present question arises ...... For I cannot understand why a limitation of time is to be imposed upon any action which the Legislature has declared not to be maintainable at all ...... This provision [section 8 of the English Act, 7 of ours], therefore, is evidently intended for the benefit of persons who intend to act right, but by mistake act wrong." BAYLEY, J., in the same case, stated (Reprint p. 686) : "There could then be no reason for providing that an action, in which the defendant is not liable at all, should be brought within a limited time." See, also, *Mollison & Collins v. Bowman,* 3 Clark 181 (1842).

The Parton case was probably not called to Chief Justice GIBSON'S attention in the Lantz case, supra; certainly it was not referred to by him.

Our Supreme Court has not had occasion to construe the sixth and seventh sections of the 1772 statute since the Lantz case, but they have been interpreted by our common pleas courts in *Mellick v. Osterstock,* 11 C. C. 82, and *Smith v. Jackson,* 9 Dist. 353. In the Mellick case, Judge REEDER, after an able discussion, concluded, as we do, that the words "acting as aforesaid," as used in the seventh section, relate to a person or persons acting by the constable's order and in his aid. This writer cannot improve upon what that learned judge clearly and convincingly said in his opinion (p. 85) ; "If this is not the proper interpretation of these words of the Act, then it would read 'any constable or person or persons acting in obedience to his writ,' etc. That would be recognizing the right of any person or persons, not an officer, to serve a legal

writ and protecting him against an action for so doing if he attempted it.

"Surely this was not the purpose of the law. If there is any logic in the position contended for by the plaintiff in this action, it must be contended that the words 'acting as aforesaid' mean 'by his order and in his aid, in obedience to his writ,' and that the words 'acting as aforesaid' refer to both phrases in §6, and that the proper reading of §7 should be 'any action brought against any constable or person or persons acting by his order and in his aid, in obedience to his writ,' etc. This seems to me the only contention that can be logically urged by the plaintiff.

"But to hold that that is the meaning of the proviso of §7 would be simply saying that while §6 decides that against a 'constable or person or persons acting by his orders and in his aid, in obedience to his writ,' there shall be no right of action, §7 says that where there is no right of action, namely, where a 'constable or person or persons acting by his order and in his aid, in obedience to his writ,' is sued, suit shall be brought 'within six months.'

"This is incongruous and illogical. The proper interpretation of the words 'acting as aforesaid' seems to me to be only 'by his order and in his aid.'"

*Jadwin v. R. Bell & L. Gallagher,* 108 Pa. Superior Ct. 543, 165 A. 511, and *Shane v. Gulf Refining Co. et al.,* 114 Pa. Superior Ct. 87, 173 A. 738, cited by appellee, are not analogous in their facts to the case at bar. The constable in the Jadwin case falsely returned that he had served the plaintiff as a defendant. In fact, he had left a copy of the summons with plaintiff's sister at a house owned by plaintiff but not his home. In the Shane case, the constable levied upon the household goods of a son-in-law and daughter of defendant in the writ, which were neither actually nor constructively in the defendant's possession. The six months'

limitation for bringing the action was not raised or considered in either case.

We are of the opinion that if a constable acts wilfully or fraudulently in disobedience to the mandate in his writ, the six months' limitation does not apply; but if he acts not wilfully or fraudulently, but in good faith as the jury found in the instant case, the action must be brought against him within six months.

The judgment is reversed and is here entered for defendant.